Our next case for argument is Brown v. Osmundson. Mr. Simonitis. Good morning, your honors. May it please the court. My name is Patrick Simonitis. I'm here on behalf of Dana Brown, who suffered from appendicitis in late February 2017. This court should reverse the district court's grant of summary judgment as to each defendant because the court resolved multiple issues of material fact and drew every inference against Mr. Brown. Viewing the facts in the light most favorable to Mr. Brown and drawing the inference in his favor, a jury could reasonably find that each defendant was aware of a serious risk to Brown's health and that they disregarded that risk. There's three defendants in this case. I'd like to walk through each, briefly discuss facts about each. First, with respect to Dr. Osmundson. I think with respect to Dr. Osmundson's subjective knowledge, subjective awareness of a risk, there's important testimony that was ignored by the district court with respect to his awareness that the symptoms overnight from February 27th into the 28th, and this is testimony in our separate appendix at page 95, but the symptoms that he was experiencing overnight were consistent with a differential diagnosis of, among other things, appendicitis. A jury could reasonably infer, based on Osmundson's admission that his Brown symptoms over that night were consistent with appendicitis, a differential diagnosis of appendicitis, that he was aware of a serious risk that appendicitis had developed. I'm sorry, what evidence is it that you think the district court disregarded? It seems that he had symptoms where he was vomiting and the record shows that Nurse Edwards didn't report this to the doctor. So what is it that you think is in the record and where in the record that that information was conveyed to the doctor? Well, in his deposition, Dr. Osmundson said that he did review the chart before he saw Mr. Brown that morning, and in the chart, the chart had these symptoms that had happened overnight. Okay, so you're not saying he was informed of it overnight. I thought you said earlier that there's evidence he was informed of that at the time that Edwards found out about it. My point, Your Honor, is that at the time he saw Mr. Brown on the morning of February 28th, he was looking through a chart that had what he admitted in his deposition gave him the basis to form a differential diagnosis of appendicitis. So as he saw Mr. Brown that morning, he had the knowledge and has said at least of the morning of the 28th that there's a substantial risk of appendicitis as of that morning. And a jury could reasonably conclude that at least as of the morning of the 28th that he knew that there was a substantial risk just based on what he said that those symptoms indicated. But I want to step back a little bit in time because even as of the 25th, Osmundson, and I'm sorry, one more point on the 28th, he testified that this was consistent with a differential diagnosis of appendicitis. But he never wrote it in a chart. He never noted that there are all these different potential diagnoses for what Mr. Brown was experiencing. It appears nowhere in the chart on the morning of the 28th. So stepping back in time, I think a jury could also conclude that as he was informed, for example, on the 25th of the shooting pain in Brown's abdomen of the different symptoms that he's experiencing, a jury could say he never wrote it down on the 28th. He didn't write it down on the 25th, but he also knew at that point. And I'm just saying a jury could conclude that at least as one reasonable inference. An inference from the fact that he didn't write it down, that he knew it? That's a pretty big leap. Not just that he didn't write it down, Your Honor, but also the fact that he's recognizing these symptoms over time, that they're not improving. But the 25th is the first day he saw him. So to say he's recognizing over time and they're not improving, he didn't see him until the 25th. Well, my more general point, Your Honor, is that when Osmondson did not see him on the 25th, that's the date that Brown was admitted to the infirmary. Osmondson didn't see him until the 27th, the morning of the 27th. So Brown was put in. That was the doctor's, the 25th was the doctor's first review of the chart or first information about him. That was when he was admitted. That's when he was admitted to the infirmary because someone called. At the doctor's orders. Yes. So someone called Dr. Osmondson at that point and told him about Brown's symptoms and then Brown was admitted. He had previously been on a 23-hour review status and then he was actually admitted to the infirmary that day. My more general point, Your Honor, was that the symptoms that he was, Brown was experiencing as of the 25th that are charted, everything there, everyone has admitted, all the medical experts and individuals with medical experience have admitted that those are symptoms consistent with appendicitis, even back to the 25th. And the fact that Osmondson was informed of those on the 25th and then was admitted at least forms a basis that, in my view, a jury could conclude that at that time he was also aware of a risk of appendicitis. Just because it wasn't noted in the chart doesn't mean that he wasn't aware of it. And just because it could be multiple different things from shooting pain in your lower right quadrant doesn't mean that he wasn't aware of the risk of appendicitis, just dating back to the 25th at least. And I think the 28th is the absolute minimum or the latest point that he was aware, but I think you could draw a reasonable inference based on those other facts that it could have been earlier as well. And I think with respect to the disregard, Dr. Kent, the surgeon who eventually operated and put the affidavit in the record, the disregard portion after the subjective awareness flows through the affidavit. The different reasons that Dr. Kent is saying that the way Osmondson handled this is completely unreasonable. It was not the way any reasonable physician would handle it. So that's where the disregard flows. And just because defendants proffered evidence from another expert that may or may not contradict it, it shouldn't be decided by the district court at summary judgment. It should be a question for the jury on who to believe as to which expert. I would talk about the other two defendants, but I see my time is going low, so I'd like to reserve some time for them. Permanent counsel. Mr. Crate. May it please the court. Good morning, your honors. My name is Patrick Crate and I represent the defendants. The defendants, Dr. Kurt Osmondson, Nurse Terry Edwards and N.P. Brittany Miller. The district court's order granting summary judgment in favor of these defendants should be affirmed. Brown fails to satisfy the subjective state of mind element with respect to each defendant. As this court laid out in the Whiting and Duckworth cases, a provider is deliberately indifferent only if he knows of and disregards an excessive risk of an inmate's health or safety. The state of mind element is measured subjectively. The defendant must know of facts from which he could infer a substantial risk of serious harm, and he must actually draw that inference. Brown and his argument relied on the Sherrod and Conley cases throughout. These cases contained facts establishing what is not present here, and that is a defendant's actual knowledge of a substantial risk. In the Sherrod case, this court found that there was evidence the defendants knew there was a risk of appendicitis, which they continually documented in the inmate's chart. However, the staff never performed the required tests to rule out appendicitis. In the Conley case, this court concluded that a reasonable jury could find the defendant doctor strongly... Doesn't Sherrod have more to teach us than just that particular fact, which I agree is not present in this case, that someone noted on a chart that appendicitis could be the issue. Doesn't Sherrod also say that the fact that a patient doesn't exhibit every symptom of appendicitis, the question of whether he exhibited enough symptoms for a physician to know this might be appendicitis, is a question for the jury. Doesn't Sherrod say that? I would agree, Your Honor, that Sherrod does state to consider those factors, but I think that that is in conjunction with the initial charting of that patient, of the provider's note to rule out appendicitis, and then the inmate in Sherrod continued to document additional symptoms that fell in line with appendicitis, and the court took notice of the fact that the subjective element of knowledge was satisfied there, because in the chart it was unmistakable. The treaters there were aware of the risk of appendicitis, but then did not take any necessary steps to rule out appendicitis. Whereas here, all of the defendants, none of them charted that there was a risk of appendicitis, because they had other reasonable differential diagnoses that they pursued first, and I think that this is a distinguishing factor from Sherrod, and why I think it is inapplicable to the case of Barr here. Well then what do you do when you get to 4.30 in the morning on the 28th, where Mr. Brown has been vomiting all night long, and the other measures that Dr. O has taken, all the different medications he's prescribed at three different points, nothing's working, the symptoms are getting worse, and then you have testimony in the record from Mr. Brown's expert saying, at that point, where there's been this vomiting all night long, and worsened symptoms, and nothing's getting better, and then the abdomen is hard, finally, on this right side, at that point, something other than more pain medication should happen. And you even have your expert saying, at 4.30 in the morning, I'd send my patient to the ER. Your Honor, to provide a little more context to what occurred prior to 4.30 a.m. on the 28th, Dr. Osmundson had evaluated the patient on the 27th, and had admitted him for the abdominal and groin pain, and at that time, ordered tests to help determine what was going on with the patient, a blood panel, a metabolic panel, abdominal x-ray series, which granted had not been completed yet, and then he's informed the morning of the 28th that Brown had a new symptom of vomiting, which was not present at Dr. Osmundson's prior evaluation. So at this time, Dr. Osmundson's updating his differential diagnosis, and concludes that he believes that Brown is suffering from cholecystitis, and part of that is because there was the additional symptom of vomiting, but also because at that time, Mr. Brown was lacking a lot of the symptoms of appendicitis, such as he did not have a fever, he did not have chills, his white blood cell count was within normal limits, and he was not experiencing any abdominal guarding. So the vomiting experience on the morning of the 28th was considered in the updated diagnosis of cholecystitis, but as the district court noted, this was a reasonable decision for Dr. Osmundson to make in utilization and exercising of his professional medical judgment. Following this examination on the 28th, or following the update that he was vomiting on the 28th, Dr. Osmundson planned to examine Mr. Brown later that same morning, which he in fact did, and this is where he makes those inferences, that there's no abdominal guarding, no chills, no fever, his white blood cell count's within normal limits, and so he prescribed additional medications and targeted for his updated diagnosis of cholecystitis. It is then only seven hours later when he's updated and told that the patient's pain is getting worse, that the nausea's getting worse, that he now has a new symptom of the abdominal firming up, and that is when he promptly orders transport to Graham Hospital. And just to continue with addressing the rest of the motion, in addition to all of those reasonable diagnoses and interventions that he tried to implement as part of figuring out what was going on with the patient, Brown has failed to point to any evidence showing that there was this known subjective risk of appendicitis at any time during the treatment of this patient. In his argument today and in his brief, he relies upon the deposition testimony, which is of course offered from a hindsight perspective in which each of these defendants agree with questioning that some of these symptoms could have been consistent with appendicitis, but under the deliberate indifference standard and having a known subjective risk of appendicitis, substantial risk of appendicitis, this is different than that prospective knowledge at the time of treatment that this is an issue that the inmate is potentially dealing with at the time. And there's no support in the record at all that Dr. Osmundson should have considered appendicitis. The medical expert testimony in this case all supports that appendicitis is a very difficult medical process to diagnose. It rarely results with textbook presentations. The treaters... Does Dr. Kent say in this expert report, though, that he should have considered it earlier? Wouldn't that provide the support? Dr. Kent did avert in his affidavit that appendicitis should have been considered earlier. I think that gets into a medical negligence case of a failure to diagnose, and I do not think that that rises to the level of deliberate indifference. And I think this also goes for Dr. Kent's other criticisms, such as what sort of imaging should be done. Dr. Osmundson ordered for X-ray imaging to be done, and Dr. Kent was critical of not having CT scans done earlier. I think that Dr. Kent's criticisms fall in line more with the failure to diagnose in a medical malpractice sense, and they do not rise to the level of a deliberate indifference. And again, I think the ultimate factor there is whether or not Dr. Osmundson ever had a subjective state of mind that this patient faced a serious risk of substantial harm from specifically appendicitis. To touch on M.P. Miller and Nurse Edwards for the remainder of my time, with M.P. Miller, her interactions with Brown are limited to purely the February 23rd previously scheduled visit, at which time Brown presented to that visit with back pain and groin pain. And Brown claimed that he also notified M.P. Miller that he was experiencing a type of abdominal pain which he had never experienced before. This prompted M.P. Miller to examine the patient's abdomen and found that there was no distension, which is inconsistent with a diagnosis of appendicitis. And M.P. Miller, given the patient's history of hernia issues and given the back and groin pain he was experiencing on that date, made a reasonable medical judgment and diagnosed the patient with groin pain. There's no evidence that she was ever aware of any future symptoms. There's no evidence that she ever reviewed the patient's chart. It was reasonable for her to conclude that this was another hernia issue and there's no evidence of her subjective knowledge of a risk of appendicitis. Let me take you off the nurses. I know you want to discuss them, but do you disagree or agree there's at least some evidence that Mr. Brown's appendix burst sometime before he got to the hospital for the surgery? I think that the treaters at Graham Hospital were hesitant to give an opinion as to when precisely the appendix did burst. I think that the testimony from Dr. Bernard, the ER physician, the night of February 28th, he testified that it was a very generalized and nonspecific symptoms that Brown was examining and that any number of intra-abdominal conditions could have explained his symptoms at that time after the occurrence care had issued. So I think that it was hard for either Dr. Bernard or Dr. Kent to state with specificity when exactly the appendix burst. I see the amount of time, but thank you all for your time and consideration. Thank you, counsel. Anything further, Mr. Simonides? Just very briefly, Your Honor. I want to make two points following up on that. First, with respect to the prospective versus retrospective aspect of the testimony that Dr. Osmundson made in his deposition, and again, it's at the separate appendix, page 95, if you read the way that the lawyer was asking those questions leading up to it, he's simply walking through Brown's chart and saying, is this consistent with appendicitis? Walking through, and eventually they get to the point where he's sitting there and he's gone through every symptom that Brown has before Osmundson saw him that morning, and he says, well, isn't this appendicitis? And the doctor said, well, it's consistent with one of several different types of gut issues, you know, diverticulitis, appendicitis, colitis, various different issues. So I don't think it's fair to say that that's just simply retrospective testimony about what he knew at the time. It's saying, it's deposition testimony that he knew that at the time there was a risk based on those symptoms that Brown was suffering from appendicitis. And with respect to the evidence about when the appendix burst, there is evidence in the record, I think that the experts were not exactly clear about, or they didn't want to predict it, but I think there is evidence that you could infer that potentially when he had that relief pain briefly and over the weekend, and to the extent that that's relevant, I think that you could find that it burst at one point, and then his abdomen started getting worse and worse, and that's what eventually led to his hospitalization too late after the fact. If there's no questions, Your Honor, then I'll sit down. Thank you very much, counsel. And Mr. Simonitis, the court appreciates your willingness to accept the appointment and your assistance to the court as well as to your client. The case is taken under advisement.